UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSE A. LOPEZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil No. 14-30173-MGM |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 14 and 16)

February 18, 2016

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the acting

Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's

entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3) (referring to

42 U.S.C. § 405(g)). Jose A. Lopez ("Plaintiff") asserts the Commissioner's decision denying him

such SSI—memorialized in a May 21, 2013 decision of an administrative law judge ("ALJ")—is in

error. Plaintiff has filed a motion for judgment on the pleadings and the Commissioner has moved

to affirm. For the reasons set forth below, the court allows the Commissioner's motion and denies

Plaintiff's motion.

## II.   BACKGROUND

Plaintiff was born on July 16, 1971. (Administrative Record ("A.R.") at 160.) He is literate in

English and has completed education up to the ninth grade. (*Id.* at 30.) Plaintiff last worked in 2008

as a housekeeper. (*Id.* at 30, 63-64.) Plaintiff worked sporadically as a machine operator in 1998 and

1999 as well as a laborer through a temp agency from 1987 to 2006, albeit for only brief durations at a time. (*Id.* at 30-31, 63-64.) He has never had a job for over three months. (*Id.* at 65.)

Plaintiff has an extensive criminal history and was last incarcerated in 2004. (*Id.* at 32-33.) Thereafter, he was placed on probation for nine-and-a-half years until June 21, 2014. (*Id.* at 57.) At the time of application, he resided in Springfield, Massachusetts with his girlfriend. (*Id.* at 53.) Plaintiff first applied for SSI on June 11, 2010 and indicated his disability began on February 1, 2010. (*Id.* at 160.) After Plaintiff's applications were denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge. (*Id.* at 10.)

A.     **Medical Evidence in the Administrative Record**

Plaintiff's medical records indicate that he saw Richard C. Mindess, M.D. for left shoulder pain on May 27, 2010. (*Id.* at 231.) He stated that problems with his shoulder began three months earlier. (*Id.*) Plaintiff attributed this injury to diving off a slide into the water at a "swimming ground." (*Id.* at 36.) On September 10, 2010, Plaintiff successfully had surgery to repair the rotator cuff in his injured shoulder. (*Id.* at 37, 255-59.) From November 15, 2010 through January 17, 2011, he completed a total of 17 visits to Pro Ex physical therapy for his shoulder before being discharged due to unsuccessful attempts to schedule further appointments. (*Id.* at 297.) On March 25, 2011, Plaintiff saw Martin Hernandez-Bem, M.D. at Comprehensive Family Medical Care. (*Id.* at 317-23.) Dr. Hernandez-Bem reported that Plaintiff had a history of left shoulder pain and chronic low back pain. (*Id.* at 317.)

Plaintiff had a psychiatric assessment at the Center for Psychological and Family Services on May 2, 2011. (*Id.* at 352-69.) The diagnoses were depression and alcohol abuse with a Global Assessment of Functioning ("GAF") score of 55.[1] (*Id.* at 354, 363.) Plaintiff was evaluated by Mary

---

[1] A GAF score is a number between 1 and 100 that measures "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Text Revision, 32 (2000). A score between 71 and 80 denotes temporary, expectable reactions to stressors and no

T. Hafey, L.I.C.S.W. at River Valley Counseling on January 24, 2012. (*Id.* at 419.) Plaintiff reported

depression, anxiety, anger issues, and memory problems, and mentioned going in front of a judge

for social security disability. (*Id.*) He further shared that he drank alcohol several times a week and

smoked marijuana "when I have enough money." (*Id.* at 421.) Ms. Hafey diagnosed Plaintiff with

depressive disorder not otherwise specified and psychotic disorder not otherwise specified and

assessed a GAF score of 50. (*Id.* at 424.)

On February 22, 2012, Leon Hutt, Ph.D. conducted a consultative psychiatric examination

of Plaintiff at Massachusetts Rehabilitation Commission Disability Determination Services. (*Id.* at

414.) Plaintiff complained of anxiety and that he had become a "hermit" who stayed at home

watching television and playing video games. (*Id.* at 415.) Plaintiff stated that he occasionally would

shop for food and was able to clean, but was unable to cook. (*Id.*) Dr. Hutt explicitly rejected that

Plaintiff suffered from panic disorder, agoraphobia, or generalized anxiety disorder. (*Id.* at 416.)

Rather, Plaintiff was diagnosed with adjustment disorder with anxious mood, alcohol abuse,

cannabis abuse, and arithmetic disorder with a GAF score of 75. (*Id.*)

Plaintiff was seen by LaVerne Kelly, L.I.C.S.W. at Clinical and Support Options on May 22,

2012. (*Id.* at 430-43.) Ms. Kelly diagnosed Plaintiff with generalized anxiety disorder and major

depressive disorder with a GAF score of 48. (*Id.* at 442.) Plaintiff would continue to visit Ms. Kelly

on 26 occasions from June 6, 2012 through April 2, 2013. (*Id.* at 456-61, 464-71, 478-95.) On

December 5, 2012, Plaintiff saw Rafael Mora de Jesus, Ph.D. at Hartford Psychological Services

LLC for an evaluation. (*Id.* at 473.) Plaintiff reported to Dr. de Jesus that he initiated psychiatric

treatment due to stress, anxiety, and other problems in his life. (*Id.* at 475.) Dr. de Jesus found

evidence of a significant affective disturbance likely associated with major depressive disorder or "a

---

more than slight impairment. *Id.* at 34. A score between 61 and 70 denotes "mild" symptoms or limitations.
*Id.* A score between 51 and 60 denotes "moderate" symptoms or limitations. *Id.* A score between 41 and 50
denotes "serious" symptoms or limitations. *Id.*

chronic disposition to becoming depressed." (*Id.*) Dr. de Jesus also recorded that there was no

significant evidence of psychosis or a formal thought disorder. (*Id.* at 476.) Ultimately, Dr. de Jesus

diagnosed Plaintiff with dysthymic disorder and anxiety disorder not otherwise specified with a GAF

score of 60. (*Id.*) On April 19, 2013, Ms. Kelly completed a mental impairment questionnaire

evaluating Plaintiff. (*Id.* at 499.) Once again, Ms. Kelly diagnosed Plaintiff with general anxiety

disorder and major depressive disorder with a GAF score of 48. (*Id.*)

**B.     Testimony Before the ALJ**

Plaintiff's application for SSI was originally denied on August 9, 2010. (*Id.* at 72-74.) Shortly

thereafter, a request for reconsideration was filed and the initial denial was affirmed on January 11,

2011. (*Id.* at 75-77.) A hearing subsequently took place before ALJ Judith M. Stolfo on January 19,

2012. (*Id.* at 25-45.) Plaintiff was represented by an attorney, who asserted that Plaintiff suffered

from chronic low back strain, shoulder pain, major depressive disorder, and severe and generalized

anxiety. (*Id.* at 29.) The ALJ questioned Plaintiff about his difficulty obtaining employment. (*Id.* at

31.) Plaintiff indicated that he had applied for jobs but had not been hired because of his criminal

background and lack of experience. (*Id.* at 32.) The ALJ further inquired about his criminal

background. (*Id.* at 32-33.) Plaintiff testified that he had last been in jail in 2004 for delivery and

manufacturing of crack cocaine. (*Id.* at 32.) He added that he had approximately 10 or 12 prior

charges, including assault and battery on a police officer, possession of a deadly weapon, possession

of marijuana, delivery of cocaine, possession of a stolen motor vehicle, and possession of stolen

goods. (*Id.* at 33.) Plaintiff stated that he stopped doing drugs when incarcerated, but had a history

of using cocaine, crack cocaine, marijuana, acid, and mescaline. (*Id.*)

Plaintiff testified that he had not received any treatment in the past six months. (*Id.* at 34-35.)

The ALJ extensively questioned Plaintiff about his lack of recent medical treatment. (*Id.* at 34-36.)

He responded that a tornado had damaged the building of his psychiatrist in June 2011 and no

additional appointments were scheduled afterwards. (*Id.* at 34.) After being pressed on why he was not seeking treatment, Plaintiff indicated that he did not want to leave the house, face people, or do anything. (*Id.* at 42.) The ALJ postponed Plaintiff's case until he was able to receive proper medical treatment and ordered a consultative examination. (*Id.* at 43-44.)

On April 24, 2013, Plaintiff appeared before the ALJ again to testify. (*Id.* at 46-67.) He stated that he was on medication and had been seeing his therapist weekly for over six months. (*Id.* at 52, 61-62.) He further explained that since he started taking his medication he no longer heard voices or had conversations with himself or imaginary people, but he still remained isolated from other people. (*Id.* at 52.) He also stated that his medication made him drowsy during the day. (*Id.* at 60.) Plaintiff explained that his girlfriend largely took care of tasks and chores around the house, although he would sometimes help with cleaning. (*Id.* at 54.) He testified that he was still having anxiety when leaving the house and would forget things three to five minutes after being told. (*Id.* at 60, 61.) Additionally, Plaintiff explained that he was performing community service by picking up litter off the street to pay his probation fines, although he felt awkward while doing so, and felt like he was "being watched" and that other people were afraid of him. (*Id.* at 58, 59.)

Following the conclusion of Plaintiff's testimony, the vocational expert ("VE"), Dr. Jeffrey Blank, testified that Plaintiff's past work as a housekeeper, machine operator, and laborer were all for brief durations. (*Id.* at 64.) Plaintiff testified that he had never had a job for more than three months. (*Id.* at 65.) The ALJ asked the VE to discuss a hypothetical individual with Plaintiff's age and education, who is limited to unskilled, simple, and repetitive tasks in a low-stress environment,[2] and who must have no interaction with the public and only occasional interaction with coworkers.[3]

---

[2] A "low-stress environment" is one that involves only occasional judgment, decision making, and changes in work setting.
[3] The ALJ did not ask the VE to consider Plaintiff's past work because "he doesn't really have any." (A.R. at 65.)

(*Id.*) The VE testified that Plaintiff could perform other work, such as being a sanitation worker, kennel attendant, or animal caretaker. (*Id.*) According to the VE, all of these jobs exist in significant numbers throughout the local and national economy. (*Id.*) Lastly, the ALJ asked the VE to consider the same hypothetical individual, but who would be off-task 20 percent of the day due to psychological problems. (*Id.* at 65-66.) The VE replied that there would be no available work for that hypothetical individual. (*Id.* at 66.)

## C.    The ALJ's Decision

The ALJ issued a decision on May 21, 2013, finding Plaintiff not disabled under section 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A) (the "Act"). (*Id.* at 19.) Thereafter, the Appeals Council of the Social Security Administration declined to review the ALJ's decision, which, as a result, became final. (*Id.* at 1-5.) Plaintiff then filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions presently at issue.

## III.    STANDARD OF REVIEW

The role of a district court reviewing an administrative law judge's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See* 42 U.S.C. §§ 405(g) and 1983(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996). The Supreme Court has defined substantial evidence as "'more than a mere scintilla.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health &*

*Human Servs.,* 647 F. 2d 218, 222 (1st Cir. 1981)). Additionally, it is the Commissioner's responsibility to weigh conflicting evidence and decide issues of credibility. *Rodriguez,* 647 F.2d at 222.

## IV.    DISABILITY STANDARD AND THE ALJ'S DECISION

Entitlement to SSI requires a showing of both disability and financial need on or after the date of the SSI application. *See* 42 U.S.C. § 1381a. Plaintiff's financial need is not challenged. Therefore, whether Plaintiff has a disability within the meaning of the Act to qualify for SSI is the only issue at hand.

The Act defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) If the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart,* 276 F.3d 1, 5 (1st Cir. 2001); *see also* 20 C.F.R. § 416.920(a)(4).

In the instant case, the ALJ found as follows with respect to these steps. First, Plaintiff had not engaged in substantial gainful activity since June 11, 2010, the application date, through the ALJ's decision on May 21, 2013. (A.R. at 12.) Second, the ALJ found Plaintiff to have severe impairments that included affective disorder and anxiety.[4] (*Id.*) Third, the ALJ determined Plaintiff's impairments did not, singly or in combination, meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations:

> He is limited to unskilled, simple, 1-2 step, routine, repetitive tasks. He can perform low stress work, defined as no more than occasional decision making required, no more than occasional changes in the work setting, and no more than occasional judgment required on the job. He can tolerate occasional interaction with coworkers, but no interaction with the general public.

(*Id.* at 13.) In connection with this RFC determination, the ALJ found Plaintiff had no past relevant work to be considered under 20 C.F.R. § 416.965; therefore, transferability of job skills under 20 C.F.R. § 416.968 was not an issue. (*Id.* at 18.) At the fifth and final step, the ALJ determined that Plaintiff could engage in other work, including occupations such as a sanitation worker or kennel attendant, which are jobs that exist in significant numbers in the national economy. (*Id.* at 19.) As a result, the ALJ determined Plaintiff was not disabled. (*Id.*)

## V.   ANALYSIS

Plaintiff makes two arguments challenging the ALJ's decision. First, Plaintiff asserts the ALJ failed to adequately consider the medical opinion of Ms. Kelly, a licensed independent clinical social worker, when assessing his RFC. Second, Plaintiff argues the ALJ's credibility determination was improper because she vaguely relied on "purported inconsistencies" in Plaintiff's testimony and did

---

[4] The ALJ determined Plaintiff's history of shoulder injury and remote punctured lung not to be severe impairments.

not provide sufficient reasons to support her credibility findings. In response, the Commissioner contends that substantial evidence in the record supports the ALJ's findings. Viewing the record as a whole, the court agrees with the Commissioner.

An administrative law judge must give "controlling weight" to the medical opinion of a "treating source" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 416.927(c)(2). When an administrative law judge does not accord a treating source's medical opinion controlling weight, he or she must consider the length, frequency, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the record as a whole, and any other relevant factors to determine the weight the opinion deserves. 20 C.F.R. § 416.927(c)(2)-(6). The administrative law judge must also give "good reasons" for the weight ultimately given to such an opinion. 20 C.F.R. § 416.927(c)(2).

Plaintiff contends that Ms. Kelly's opinion is one of a "treating source." Ms. Kelly does not fit the definition of a "treating source," however, because a licensed independent clinical social worker is not among the "acceptable medical sources" listed in 20 C.F.R. § 416.913(a). *See also Randall v. Astrue,* No. 09-cv-11273-NG, 2011 WL 2649967, at *1 (D. Mass. July 5, 2011). Rather, she is an "other" medical source. 20 C.F.R. § 416.913(d). The opinions of other medical sources are not entitled to controlling weight and an administrative law judge is not required to provide "good reasons" for the weight assigned to such opinions or consult the factors in 20 C.F.R. § 416.927(c)(2)-(6). *Taylor v. Astrue,* 899 F. Supp. 2d 83, 88 (D. Mass. 2012). An administrative law judge still must adequately explain the treatment of opinions by other medical sources so that a reviewer can determine if the decision is supported by substantial evidence. *Id.* at 88-89. Further, an administrative law judge cannot ignore entirely the opinions of other medical sources. *Doucette v. Astrue,* 972 F. Supp. 2d 154, 170 (D. Mass. 2013).

The ALJ did not completely ignore the opinion of Ms. Kelly. Rather, Ms. Kelly's psychiatric assessment, diagnoses, and notes were summarized in the ALJ's determination. (A.R. at 16, 18.) The ALJ stated that Ms. Kelly diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder with a GAF score of 48 on May 22, 2012 and again on April 19, 2013. (*Id.* at 16.) The ALJ also noted that Ms. Kelly indicated that "by September 2012 the claimant was reporting he was feeling better, with improved mood, and participating in more activities." (*Id.*) During Ms. Kelly's last report, on April 19, 2013, the ALJ pointed out that Ms. Kelly "noted that [Plaintiff's] depression and anxiety would affect his presence at work, but she could not assess to what extent." (*Id.*) Ultimately, the ALJ did not completely disregard Ms. Kelly's opinion, but granted her therapist report "little weight," because she is not an "acceptable medical source" and her GAF score of 48 was inconsistent with the other evidence in the record. (*Id.* at 18.)

Substantial evidence in the record supports the ALJ's decision that Ms. Kelly's opinion conflicted with other medical sources, especially the exams by Dr. Hutt and Dr. de Jesus. Prior to Plaintiff's meeting with Ms. Kelly, Dr. Hutt performed a consultative examination on February 22, 2012. (*Id.* at 414-16.) Dr. Hutt assigned a GAF score of 75 and specifically stated that he did not believe Plaintiff suffered from generalized anxiety disorder. (*Id.* at 416.) Plaintiff was referred to Ms. Kelly and was initially seen for a psychiatric assessment on May 22, 2012. (*Id.* at 16, 442-43.) On December 5, 2012, Dr. de Jesus saw Plaintiff for a psychological evaluation. (*Id.* at 473.) Dr. de Jesus assigned a GAF score of 60 and suggested Plaintiff had a "chronic disposition to becoming depressed." (*Id.* at 475, 476.) The ALJ indicated these GAF scores (60 and 75) were high; more importantly, she stated both Dr. Hutt and Dr. de Jesus reported Plaintiff, had no apparent problems with functioning independently on a daily basis. (*Id.* at 18.) Ms. Kelly reported several times in her notes that Plaintiff had notable changes in mood, often noting tearfulness, but never any significant changes to his functioning or behavior. (*Id.* at 456-61, 478-95.) Further, in the mental impairment

questionnaire regarding Plaintiff, dated April 13, 2013, Ms. Kelly stated she was "unable to assess" how Plaintiff's impairments or treatment would cause him to miss work. (*Id.* at 499, 502.) She also stated, "however, client's depression and anxiety would affect his presence at work." (*Id.* at 502.)

The court finds substantial evidence supports the Commissioner's determination that Ms. Kelly's findings are inconsistent with the evidence provided by acceptable medical sources, and there is substantial evidence supporting the ALJ's decision to afford Ms. Kelly's findings little weight. As previously indicated, the ALJ was not required to give "good reasons" for the weight ultimately assigned. 20 C.F.R. § 416.927(c)(2). Nevertheless, the court finds that, under *Taylor*, the ALJ adequately explained that Ms. Kelly's opinion was granted little weight because she is not an "acceptable medical source" and her findings were inconsistent with those of acceptable medical sources. Both of these explanations by the ALJ are supported by substantial evidence in the record. *Cf. King v. Astrue*, No. 09-cv-337-PH, 2010 WL 4457447, at *4 (D. Me. Mar. 29, 2010) ("The administrative law judge fulfilled applicable requirements with respect to the [opinion of a nurse practitioner], expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent reviewer to follow his reasoning. In particular, he noted that he declined to afford it weight because it was (i) contradicted by the plaintiff's own testimony, (ii) not supported by contemporaneous medical records, and (iii) rendered by an individual who was not an 'acceptable medical source' and thus not entitled to controlling weight.").

Plaintiff also challenges the ALJ's credibility determination. The ALJ found Plaintiff's credibility was undermined by his history of illegal activity, ongoing alcohol and marijuana use, and other hearing testimony. Specifically, Plaintiff testified at his initial hearing that he has been denied work because of his criminal past rather than any significant physical or psychiatric impairment. He also testified at his supplemental hearing that "he was doing okay and that his medications were helping." (A.R. at 18, 51-52.)

Generally speaking, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) (*per curiam*). However, an administrative law judge's credibility findings cannot be based on "groundless assertions" but must, instead, be "'rationally supported'" by substantial evidence. *Rohrberg v. Apfel,* 26 F. Supp. 2d 303, 309 (D. Mass. 1998). In making a credibility determination, the ALJ must consider seven prescribed factors:

> (1) The claimant's daily activities, (2) the location, duration, frequency, and intensity of the medical symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness and side effects of any medication, (5) treatment other than medication the claimant receives, (6) measures claimant uses for pain relief, and (7) any other functional limitations and restrictions due to the claimant's impairments.

*See* 20 C.F.R. § 416.929(c)(3). "Then, in assessing the credibility of a claimant's complaint . . . , the ALJ must consider whether, in light of [these] factors, h[is] complaints are consistent with the objective medical evidence and other evidence in the record." *McDonald v. Astrue,* No. 10-cv-10896-DPW, 2011 WL 3562933, at *11 (D. Mass. Aug. 15, 2011) (quoting *Arnold v. Astrue,* No. 10-cv-10429-RWZ, 2011 WL 2940718, at *5 (D. Mass. July 19, 2011)). However, while the administrative law judge must consider each of these factors, there is no requirement that specific findings regarding each of the factors be contained in the written decision. *See Shields v. Astrue,* No. 10-cv-10234-JGD, 2011 WL 1233105, at *11 (D. Mass. Mar. 30, 2011).

The ALJ's decision and her questioning at both hearings demonstrate she thoroughly considered the required factors and, in light of Plaintiff's inconsistent statements, found his complaints to lack credibility. First, there exists substantial evidence in the record that Plaintiff has an extensive criminal history. (A.R. at 32-35, 415, 474.) During the initial hearing, for instance, Plaintiff testified extensively regarding his criminal background. (*Id.* at 32-35.) The ALJ may consider a claimant's criminal history as one of several factors that undermine his credibility, but past

misconduct alone cannot provide a basis to automatically reject testimony outright. *See Smith v. Astrue,* 851 F. Supp. 2d 305, 310 (D. Mass. 2012). The transcript confirms that the ALJ placed much more emphasis on Plaintiff's testimony that he had applied for jobs and was denied because of his criminal history, and did not simply make a credibility determination based solely on Plaintiff having a criminal record. In fact, the ALJ suggested Plaintiff apply to the Salvation Army, which hires people with convictions, after Plaintiff testified that he was still trying to find work. (A.R. at 39.)

Second, Plaintiff's ongoing alcohol and marijuana use outlined throughout his medical records is inconsistent with his testimony before the ALJ. A "strong indication of an individual's statements is their consistency, both internally and with other information in the case record." *McDonald v. Astrue,* No. 10-cv-10896-DPW, 2011 WL 3562933, at *12 (D. Mass. Aug. 15, 2011). Plaintiff testified that he stopped doing drugs when incarcerated in 2004 and had been sober since. (A.R. at 33, 57.) However, on January 24, 2012, Plaintiff reported to Ms. Hafey that he drank alcohol several times a week and smoked marijuana when he had enough money. (*Id.* at 419-21.) During the consultative examination with Dr. Hutt on February 22, 2012, Plaintiff indicated that he smoked marijuana when he could afford it and provided a similar answer regarding alcohol.[5] (*Id.* at 414.) Ms. Kelly, on May 22, 2012, noted Plaintiff had a history of cocaine and marijuana use but had been sober for three years. (*Id.* at 439.) During the psychological evaluation with Dr. de Jesus, Plaintiff stated that he drank alcohol when he had the funds to pay for it. (*Id.* at 474.) These inconsistent representations and Plaintiff's reluctance to answer questions about his alcohol use provided a substantial basis for the ALJ to question his credibility.

The court cannot agree with Plaintiff that the ALJ made an improper credibility determination. The ALJ pointed to evidence of Plaintiff's ongoing alcohol and marijuana use, which

---

[5] Dr. Hutt recorded: "On alcohol, he said that he uses it 'once in a while.' He then related it to whether or not he has money, stating that he will use it 'whenever I can.' He then stated 'you can say I quit. I've had none for a month.'" (A.R. at 414.)

is shown substantially throughout the record, and found this to undermine his credibility. She also cited testimony that Plaintiff was responding well to his medication and, in fact, had been unable to find work because of his criminal history, not because of any impairments.

Substantial evidence also supports the ALJ's RFC finding. The ALJ asserted there was both a lack of objective support and questions as to credibility. (*Id.* at 17-18.) She found that, post-surgery, Plaintiff's shoulder was without restriction and he was physically healthy. (*Id.* at 18.) More importantly, the ALJ determined that Plaintiff's psychiatric problems lacked objective support based on evaluations by Dr. de Jesus and Dr. Hutt. (*Id.*) The ALJ found there to be substantial disparity between the Plaintiff's complaints and the objective medical findings in the record. (*Id.* at 17-18.)

This court must uphold the ALJ's determination if it was supported by substantial evidence, even if the available evidence could have supported other determinations, and even if a different administrative law judge may have reached a different conclusion when reviewing the record. *See Bird v. Colvin,* No. 14-cv-30108-MGM, 2015 WL 5315196, at *7 (D. Mass. Sept. 11, 2015). Substantial evidence supports the conclusion reached by the ALJ in this case.

## VI.  CONCLUSION

For these reasons, the court DENIES Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) and ALLOWS Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 16). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge